## STATE v. WILLIAM J. REILAND.

142 N. W. (2d) 635.

May 6, 1966—No. 40,191.

*Dingle & Krieger* and *Robert Patterson,* for relator.
*D. P. Mattson,* County Attorney, for respondent.

RoGOSHESKE, JUSTICE.

The question raised in this prohibition proceeding is whether, under the facts shown, the so-called double-punishment statute of our Criminal Code of 1963, Minn. St. 609.035, recently considered in State v. Johnson, 273 Minn. 394, 141 N. W. (2d) 517, bars a prosecution of a pending charge of criminal negligence (a felony) after defendant was convicted, sentenced, and served time in jail for the offense of driving after revocation of his driver's license (a misdemeanor).

The few facts which are revealed by the record and defendant's brief appear undisputed. On August 21, 1965, an automobile allegedly driven by defendant struck and killed a young male pedestrian. At some undisclosed time and place after the occurrence, defendant admitted having struck an object on a road in Olmsted County and that he did not stop his automobile to investigate. He also admitted, presumably to the prosecuting authorities, that he was driving after revocation of his driver's license on the day and at the time and place of the tragedy as well as at other unspecified times and that prior to striking the object he had consumed intoxicants. The only other facts made known to us were referred to in oral argument—that the pedestrian was struck on a county highway about 3 miles north of the city of Rochester and that defendant at that time had driven from Rochester to that point and beyond to his destination.

Defendant was initially charged with driving without a driver's license in possession, but that charge was dismissed before arraignment. On August 23, 1965, he was charged with the statutory offense of driving after revocation of his driver's license.[1] He appeared without counsel and, upon his plea of guilty, was sentenced to 30 days in the county jail by the municipal court. The sentence was imposed September 7, 1965, stayed to September 10, 1965, and has been served.

On September 10, 1965, a complaint was filed charging defendant with the felony offense of criminal negligence resulting in death.[2] At the preliminary hearing before the municipal court, defendant—now represented by counsel—moved to dismiss the complaint on the ground that he was protected from further prosecution by § 609.035. The court denied the motion. Because the problem of the application and scope of

---

[1] Minn. St. 171.24.

[2] Minn. St. 609.21 provides: "Whoever operates a vehicle * * * in a grossly negligent manner and thereby causes the death of a human being not constituting murder or manslaughter is guilty of criminal negligence in the operation of a vehicle resulting in death and may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $5,000, or both."

the double-punishment statute appears to be causing concern, we granted review by a writ of prohibition.

The statute in question provides:

"* * * [I]f a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them. All such offenses may be included in one prosecution which shall be stated in separate counts."

It is defendant's claim that he is immune from prosecution of the pending criminal negligence charge because it and the offense of driving after revocation were concurrent offenses, committed at the same time, at the same place, and arose out of a single behavioral incident.

In State v. Johnson, *supra,* which was filed subsequent to submission of this case, we attempted at some length to ascertain the legislative intent embodied in § 609.035. While there is no necessity for reiterating the background, policy, and purpose of the statute, it must be emphasized that it does prohibit multiple prosecutions as well as double punishment under circumstances where a "person's conduct" (by which is meant a "single behavioral incident") results in violations of more than one criminal statute. Whether the violations result from a single behavioral incident depends upon the facts and circumstances of each case. Thus, in Johnson, we determined that defendant's conduct in driving while under the influence of intoxicants and driving over the centerline, which occurred within a period of a few minutes during the course of uninterrupted operation of his automobile over a distance of 2 blocks, resulted from a single behavioral incident. Although the offenses there, as here, are separate as distinguished from included offenses in that each requires proof of facts which the other does not, we held the statute prohibited double punishment. In reaching that conclusion, we applied the following test which specifies the factors necessary to support a determination that multiple violations result from a single behavioral incident (273 Minn. 405, 141 N. W. [2d] 525):

"* * * [V]iolations of two or more traffic statutes result from a single behavioral incident where they occur at substantially the same time and

place and arise out of a continuous and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment."

We also observed that violations occurring under such circumstances demonstrate a substantial relationship between the conduct constituting the violations. Stated another way, the conduct and state of mind of the defendant are indivisible even though each offense is separate in the sense of requiring proof of facts which the other does not.

Applying this test to the case at bar, it seems reasonably clear that the admitted offense and the pending charge did not result from a single behavioral incident. Upon the limited facts disclosed, it is not reasonably established that both violations occurred at substantially the same time and place, or even that they arose out of a continuous and uninterrupted course of driving the motor vehicle. We simply do not know at which point in time each violation occurred. Whether defendant's conviction of driving after revocation was based upon his admission of driving prior to, at the time of, or after, striking the child, or upon a composite of all, his driving after revocation of license is not established. His argument assumes that the conviction was for driving at the very moment of striking the child, but he does not admit striking the child—only that he struck an unidentified object. Surely, more than that must be shown before the substantial protection afforded by the statute can be invoked.

But even assuming that the offense of driving after revocation occurred at the same time and place as his alleged negligent driving since the former offense by its nature is continuous, beginning when driving commences and ending when driving ceases, and recognizing that negligent driving obviously requires driving a vehicle, we hold that both violations, under the circumstances, do not "manifest an indivisible state of mind or coincident errors of judgment." There is no substantial relationship between the conduct constituting each offense. Since it is quite possible, and perhaps very probable, for one to drive carefully despite revocation of his driver's license, that misconduct—unlike, for example, reckless driving—need have no relationship to driving in a grossly negligent manner. Although the offense of negligent homicide is classified as a serious crime, in essence it is a traffic offense designed to promote the safety of persons properly upon the highway. As is true of other traffic offenses, intent is

not an essential element of the crime. Defendant's state of mind or error in judgment causing him to drive after revocation may be characterized as willfully defying a statute designed to punish drivers who have had their driver's license revoked. As such, it has no relationship to the conduct of operating and controlling a motor vehicle in a grossly negligent manner, either in cause or effect. The conduct constituting each offense is not the result of a single motivation directed toward a single goal but is essentially dissimilar and unrelated in both respects. Defendant is not being harassed by multiple prosecutions for offenses growing out of a single behavioral incident or out of the same transaction, but rather for two separate and distinct behavioral incidents. Accordingly, we hold that § 609.035 does not bar prosecution of the pending charge.

Mindful of the difficulties of determining the scope of application of the statute, we should point out that it is of overall importance to bear in mind the underlying policy intended to be expressed by the statute. In brief, it is to protect against exaggerating the criminality of a person's conduct by making both punishment and prosecution commensurate with culpability. To permit an accused to escape prosecution and punishment for the serious offense by the happenstance of a procedural oversight which results in a prior conviction of a minor offense perverts the policy and objectives of the statute by foreclosing consideration of the total criminal behavior. We hasten to add, however, that under its present wording cases are likely to arise where the prohibition imposed must be adhered to even though the consequence is inconsistent with the statute's intended objectives. Our research discloses numerous cases in three of the four states having similar statutes and others dealing with the problem of multiple prosecutions relating to traffic offenses and concurrent crimes.[3] From these cases, no generally accepted test or approach has yet

---

[3] People v. Morris, 237 Cal. App. (2d) 773, 47 Cal. Rptr. 253; People v. Young, 224 Cal. App. (2d) 420, 36 Cal. Rptr. 672; People v. Steinbach, 166 Cal. App. (2d) 307, 333 P. (2d) 147; People v. McKee, 80 Cal. App. 200, 251 P. 675; Burnett v. Commonwealth (Ky.) 284 S. W. (2d) 654; State v. Francis, 67 N. J. Super. 377, 170 A. (2d) 476; State v. Shoopman, 11 N. J. 333, 94 A. (2d) 493; State v. Albertalli (N. J.) 112 A. 724; Martinis v. Supreme Court, 15 N. Y. (2d) 240, 258 N. Y. S. (2d) 65, 206 N. E. (2d)

been developed for determining when a person's conduct is divisible or what constitutes a single behavioral incident. In the final analysis, the determination must depend upon the facts of each case.

All of the cases relied upon by defendant are either consistent with our views[4] or are readily distinguishable,[5] save one,[6] the reasoning of which we do not find persuasive. Two California cases are noteworthy. One holds that vehicular manslaughter and leaving the scene of the accident are not within the prohibitions of that state's double-punishment statute,[7] and the other holds that convictions for vehicular manslaughter and felony drunk driving are.[8] Both recognize that a behavioral incident may or may not be divisible depending upon the facts, including those revealing the state of mind of defendant. Both results appear compatible with the test suggested in Johnson. One recent California District Court of Appeals decision holds that the prohibition of serialized prosecution applies to driving after revocation and driving under the influence because the violations arise out of the same act, namely, driving a motor vehicle.[9] While we are inclined to believe that when the facts and circumstances warrant our statute should be accorded a liberal construction, we would have to agree with the reasoning expressed by the dissent because the single factor of driving a motor vehicle is hardly a sufficient basis upon which to invoke the statutory prohibitions.

---

165; People v. Pearson, 120 Misc. 377, 199 N. Y. S. 488; People v. Aldrich, 191 N. Y. S. 899; People v. Fitzgerald, 101 Misc. 695, 168 N. Y. S. 930; Commonwealth v. Bishop, 182 Pa. Super. 151, 126 A. (2d) 533; Smith v. State, 159 Tenn. 674, 21 S. W. (2d) 400; Dowdy v. State, 158 Tenn. 364, 13 S. W. (2d) 794; State v. Thatcher, 108 Utah 63, 157 P. (2d) 258; State v. Empey, 65 Utah 609, 239 P. 25, 44 A. L. R. 558.

[4] People v. Fitzgerald, *supra;* People v. Repola, 280 App. Div. 735, 281 App. Div. 679, 117 N. Y. S. (2d) 283; Trawick v. City of Birmingham, 23 Ala. App. 308, 125 So. 211; Martinis v. Supreme Court, *supra.*

[5] People v. Savarese, 1 Misc. (2d) 305, 114 N. Y. S. (2d) 816; People v. Pearson, *supra.*

[6] People v. Aldrich, *supra.*

[7] People v. Steinbach, *supra.*

[8] People v. Young, *supra.*

[9] People v. Morris, *supra.*

Finally, we allude to what was said in Johnson—that the problem presented in the case before us could not arise if both of the offenses were included in one prosecution stating each as separate counts, a procedure expressly authorized by the statute. Minn. St. 630.23, rendering indictments charging more than one offense demurrable, makes an exception "in cases where it is allowed by statute." It is true that misdemeanor cases are not usually initiated in district court. However, the court does have original jurisdiction[10] and its exclusive jurisdiction is invoked by including the felony charge. Though the problem was not presented or briefed, it would seem that if all offenses were charged as counts, the prosecution could proceed in district court to a determination of the question of guilt of each offense in the same manner as is accomplished where the prosecution is for offenses comprising different degrees. Section 628.14 expressly authorizes included offenses to be charged as counts, and it is not uncommon for one of the lesser degrees charged, or at least submitted for determination upon trial, to be a misdemeanor.

Writ discharged.

---

[10] Minn. Const. art. 6, § 5; Minn. St. 484.01. See, also, State ex rel. Koalska v. Swenson, 241 Minn. 278, 62 N. W. (2d) 842.